UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

N⁰ 11-cv-2445 (JFB) (WDW)
_____

ROY A. JONES, JR.,
ON BEHALF OF HIMSELF AND THE ESTATE OF ROY JONES III, AND
MARIE JOES,
AS ADMINISTRATOR OF THE ESTATE OF ROY JONES III,

Plaintiffs,

VERSUS

CORRIS NICKENS ET AL.,

Defendants.
_____

**MEMORANDUM AND ORDER**
August 20, 2013
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Roy A. Jones, Jr. ("Roy Jones"), on behalf of himself and the Estate of Roy Jones III, and Marie Jones, as Administrator of the Estate of Roy Jones III (collectively, "plaintiffs"), commenced this action against Corris Nickens, Jamie Robertson, the County of Suffolk (collectively, the "County defendants"), Roy Burnham, Susan Masciello, Justine Bullock, Kimberly Cardaci, Bonnie Williams, Susan Rosenberg, Mira Rucando, Jin Wang, Dorrett Newell, Jonathan Kelvas, Ryan Koch, Karen Chang, Abram D'Amato, Dwight Lee (collectively, the "Stony Brook Hospital defendants"), Southampton Hospital, Kevin Costello, Susan Corwith, Nancy Naughton, Patricia Pensa, Jennifer Concepcion Arline (collectively, the "Southampton Hospital defendants"), Maria Thorner, Hollywood Nursery, Inc. (collectively, the "Hollywood Nursery defendants"), Lawrence Rubin ("Rubin"), Richard Scriven ("Scriven"), Devin Grossman ("Grossman"), Steven West ("West"), Barry Armandi ("Armandi"), Justin Zack ("Zack"), and Pedro Jones (collectively, "defendants") pursuant to 42 U.S.C. § 1983 ("Section 1983") and the New York Social Services Law. Plaintiffs also bring claims under New York common law for negligence, medical malpractice, social worker malpractice, and wrongful death.

Specifically, plaintiffs allege that the actions or inaction of Suffolk County, various individual employees of the County's Department of Social Services,

Stony Brook University Hospital, Southampton Hospital, Hollywood Nursery, and various individual physicians, contributed to the death of the decedent at the hands of his mother's boyfriend. Essentially, plaintiffs allege that the defendants failed to do enough to protect the decedent from the threats of child abuse and maltreatment that he faced while living with his mother and her boyfriend.

Presently before this Court are multiple motions to dismiss the second amended complaint. The Southampton Hospital defendants, Hollywood Nursery defendants, Rubin, Scriven, West, and Grossman all move to dismiss the federal claims alleged against them, arguing that they are private entities and/or actors not subject to suit under Section 1983. The Stony Brook Hospital defendants also move to dismiss the federal causes of action under the theory that, based on controlling case law, plaintiffs have failed to state plausible due process claims against them. All of the moving defendants also urge the Court – in the event it dismisses plaintiffs' federal claims – to decline to exercise supplemental jurisdiction over the remaining state law claims. The Court notes that the County defendants (as well as Pedro Jones, Armandi, and Zack) have not formally moved to dismiss any of the claims at this time.

For the reasons set forth in detail below, the Court grants all of the motions to dismiss with respect to plaintiffs' federal due process claims. The Southampton Hospital defendants, Hollywood Nursery defendants, and Rubin are private actors, and plaintiffs have failed to sufficiently allege that they were acting under color of state law at the time of the events in question. Accordingly, the Section 1983 due process claims brought against them cannot survive a motion to dismiss. As for the Stony Brook Hospital defendants, as well as West, Scriven, and Grossman (all three of whom are alleged to be affiliated with the Stony Brook University Hospital to a certain degree), plaintiffs have failed to state plausible substantive or procedural due process claims against them. Based on the Supreme Court's opinion in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), plaintiffs have no plausible substantive due process claim under the facts alleged (even accepting them as true and drawing all reasonable inferences therefrom). Moreover, under the framework established by the Second Circuit in *Sealed v. Sealed*, 332 F.3d 51 (2d Cir. 2003), for analyzing the type of procedural due process claim asserted in this case, as well as New York State case law interpreting the relevant statutory provisions, plaintiffs have failed to allege that they have a liberty or property interest subject to due process scrutiny. For these reasons, both plaintiffs' substantive and procedural due process claims cannot survive the Stony Brook Hospital defendants', Scrivens', West's, and Grossman's motions to dismiss. Accordingly, the federal claims are dismissed as against all moving defendants.

The Court denies all of the motions with respect to the request that it decline to exercise supplemental jurisdiction over the remaining state law claims. Given that the state law claims alleged against the moving defendants derive from a common nucleus of operative fact as the federal claims that remain in this case against the County defendants, Pedro Jones, Armandi, and Zack, it is proper at this juncture for the Court to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.[1]

---

[1] The Court notes that, although counsel for the County defendants stated at oral argument that she believes the substantive and procedural due process

I. BACKGROUND

A. Factual Background

The following facts are taken from the second amended complaint. These facts are not findings of fact by the Court. Instead, the Court assumes these facts to be true for purposes of deciding the pending motions to dismiss, and will construe them in a light most favorable to plaintiffs, the non-moving party.

Roy Antonio Jones, III ("decedent"), the son of Roy Jones and Vanessa Jones, was born at Southampton Hospital, in Southampton, New York, on March 18, 2009. (Second Am. Compl. ¶ 54.) He passed away at Southampton Hospital on August 1, 2010. (*Id.* ¶ 55.) His grandmother, Marie Jones, was granted Letters of Administration of his Estate by the Surrogate Court of the County of Suffolk on April 27, 2012. (*Id.* ¶ 56.) The instant action is brought by the decedent's father, Roy Jones,[2] and his grandmother, Marie Jones.

1. The Orders of Protection and Vanessa Jones' Subsequent Custody of the Decedent

On June 4, 2009, Judge Joan M. Genchi of the Family Court of the State of New York, County of Suffolk, issued two orders of protection (1) preventing Roy Jones and Vanessa Jones from having physical contact with the decedent other than visitation supervised by the Suffolk County Department of Social Services ("DSS"), and (2) directing Roy Jones and Vanessa Jones to refrain from "acts or threats of domestic violence that create an unreasonable risk to the health, safety or welfare of the decedent." (*Id.* ¶ 59.)

Subsequent to the issuance of the orders of protection, Vanessa Jones moved back and forth with the decedent between her mother's home at the Shinnicock Indian Reservation in Southampton, New York, and a shelter in Huntington Station, New York. (*Id.* ¶¶ 61-63.) DSS informed Roy Jones that, because of Vanessa Jones' constant movement, DSS was having trouble keeping a watch on the decedent. (*Id.* ¶ 63.) DSS made no effort, however, to remove the decedent from the custody of Vanessa Jones, despite the orders of protection that had been entered against her. (*Id.*) Moreover, on December 28, 2009, DSS approved a residence in Flanders, New York for Vanessa Jones and the decedent, even though the orders of protection allowed her only supervised visitation with the child. (*Id.* ¶ 64.)

At some point in time, Roy Jones (the father of the decedent) was incarcerated. (*Id.* ¶ 65.) Vanessa Jones began to date, and later jointly resided with, Pedro Jones (having no relation to the decedent or to plaintiff Roy Jones). (*Id.* ¶ 65.) The decedent was living with Vanessa Jones when Pedro Jones moved in. (*Id.*)

---

claims against the County defendants should be dismissed for the same reasons propounded by the Stony Brook Hospital defendants in support of their motion (*see* Oral Arg. Feb. 13, 2013), no formal written motion was made. Accordingly, the Court declines to address the plausibility of those claims at this time, and the federal claims brought against the County defendants remain in this case. Because defendants Armandi and Zack answered the amended complaint and have not moved to dismiss any of the claims, the federal claims alleged against them remain in the case as well. As for Pedro Jones, the docket indicates that he was served with the summons and complaint (and that he contacted plaintiffs to inform them of his desire to "fight" in this action (*see* ECF No. 35, Letter dated July 27, 2012 attaching Pedro Jones correspondence)), but has failed to answer, move, or otherwise appear in this action to date. Thus, at this juncture, the federal claims against him remain in the case.

[2] Roy Jones is currently incarcerated. (Second Am. Compl. ¶ 10.)

3

2. The Events Leading to the Decedent's Death

At various points in time, the decedent "suffered physical injuries, said injuries indicative of child abuse, maltreatment and/or neglect, and was seen on multiple occasions suffering from same by doctors, nurses, agents, employees and servants of Hollywood Nursery, Inc., Southampton Hospital, Stony Brook Hospital and emergency medical technicians . . . ." (*Id.* ¶ 66.) None of those medical professionals took action to remove the decedent from the custody and control of Vanessa Jones and Pedro Jones. (*Id.* ¶ 67.)

For example, in November of 2009, the decedent was treated at Southampton Hospital for injuries indicative of physical abuse. (*Id.* ¶ 69.) Then, on approximately May 25, 2010, the decedent was assaulted by Pedro Jones; Pedro Jones punched the decedent in the ribs. (*Id.* ¶ 70.)[3] In June of 2010, Pedro Jones "hit" and "repeatedly punched" the decedent, causing the decedent to fall to the ground. (*Id.* ¶ 73.) Following that incident, on approximately July 19, 2010, the decedent was taken to Southampton Hospital, and was then transferred and admitted to Stony Brook Hospital, where he was diagnosed with a fractured skull. Doctors also noticed other signs of physical abuse. (*Id.* ¶ 75.) None of the medical professionals who transferred the decedent between facilities or tended to the decedent once he was admitted to Stony Brook University Hospital reported any findings of child abuse. (*Id.* ¶¶ 76-77, 79.)[4] The decedent was discharged from Stony Brook University Hospital on July 20, 2010, and was placed back in the custody and care of Vanessa Jones and Pedro Jones. (*Id.* ¶ 80.)

Roy Jones was interviewed by the County of Suffolk in July of 2010. He was asked about any dangers posed to the health and well-being of his child. Roy Jones "informed the County that his child was in danger while in the care of Vanessa Jones, but the County took no action." (*Id.* ¶ 82.)

On approximately August 1, 2010, Vanessa Jones left decedent with Pedro Jones after the couple got into a heated argument. (*Id.* ¶ 83.) Pedro Jones was under the influence of drugs at the time. (*Id.* ¶ 82.) That evening, Pedro Jones shook, punched, fatally wounded, and murdered the decedent (sixteen-months-old at the time). The decedent was pronounced dead at Southampton Hospital at approximately 9:11 p.m. that night. (*Id.* ¶ 86.) The Suffolk County Police Department arrested Pedro Jones following the death of the decedent. (*Id.* ¶ 85.) The police took a statement from Pedro Jones, in which he admitted to assaulting the decedent multiple times throughout 2010. (*Id.* ¶¶ 68, 85.) Pedro Jones has since been convicted for the murder of the decedent. (*Id.* ¶ 85.)

B. Procedural History

Plaintiff Roy Jones, proceeding *pro se* at the time, filed the complaint in this action on May 17, 2011. By Order dated October 21,

---

[3] According to the second amended complaint, around the time of this incident (sometime in approximately May of 2010), Vanessa Jones moved with her son back to the shelter in Huntington Station. (*Id.* ¶ 71.) Then, in approximately June of 2010, Vanessa Jones was arrested for assaulting another individual in Southampton, New York, and was placed on probation by the Suffolk County Court. Although DSS was made aware of those charges against Vanessa Jones, DSS never took any steps to remove the decedent from her care or to enforce or expand the orders of protection previously entered against her. (*Id.* ¶ 72.)

[4] According to the second amended complaint, doctors or employees of Stony Brook University Hospital simply told Pedro Jones not to punch the decedent anymore. (*Id.* ¶ 81.)

4

2011, this Court stayed (1) the action for 60 days, pending plaintiff's application to the appropriate court to be appointed the representative of his son's estate, and (2) defendants' time to move to dismiss. On December 20, 2011, Michael Collesano ("Collesano") filed a notice of appearance with the Court on behalf of the plaintiffs. The Court held a telephone conference with the parties on April 11, 2012, at which time the Court further stayed the action and asked that Collesano inform the Court when permanent letters of administration were issued. Collesano filed letters of limited administration, issued to Marie Jones, with the Court on May 1, 2012. By Order dated May 29, 2012, the Court directed plaintiff to file an amended complaint no later than June 22, 2012.

An amended complaint was filed on June 22, 2012. The Hollywood Nursery defendants filed an answer to the amended complaint on August 2, 2012, as well as cross-claims for indemnification and negligence against all co-defendants. The Southampton Hospital defendants filed an answer on August 10, 2012. On August 13, 2012, the County defendants filed an answer to the amended complaint, as well as an answer to the Hollywood Nursery defendants' cross-claims. Defendants Armandi and Zack filed answers to the amended complaint and to the Hollywood Nursery defendants' cross-claims on August 16, 2012, as did defendant Rubin on August 21, 2012. By letter dated September 7, 2012, the Stony Brook Hospital defendants requested a pre-motion conference in anticipation of moving to dismiss the amended complaint. Other defendants then filed letters with the Court joining in that request. On September 20, 2012, the Court held a telephone pre-motion conference with all parties, at which time the Court set a date by which plaintiffs could file a second amended complaint, as well as a briefing schedule for the anticipated motions to dismiss.

Plaintiffs filed a second amended complaint on October 3, 2012. Defendants Scriven, Grossman, and West filed separate answers to the second amended complaint on October 23, 2012, and the Southampton Hospital defendants filed an answer on October 25, 2012.

On November 6, 2012, the Hollywood Nursery defendants filed a motion to dismiss the seventh and eighth causes of action (the only federal causes of action) contained within plaintiff's second amended complaint, and further requested that the Court decline to exercise supplemental jurisdiction over the remaining state law causes of action. On November 12, 2012, defendant Rubin filed a motion to dismiss requesting the same, as did the Stony Brook University Hospital defendants on November 14, 2012 and the Southampton Hospital defendants on November 15, 2012. On November 19, 2012, defendants Scriven, West, and Grossman filed a motion to dismiss the seventh and eighth causes of action alleged against them. On November 28, 2012, plaintiffs filed their opposition to all of the motions to dismiss. The Hollywood Nursery defendants filed their reply on January 9, 2013, as did the Stony Brook Hospital defendants, the Southampton Hospital defendants, and defendant Rubin on January 14, 2013. Oral argument was held on February 13, 2013. The Court has fully considered the arguments and submissions of the parties.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See*

5

*Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citation omitted)).

The Court notes that in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom.*, *Lentell v. Merrill Lynch Co.*, 396 F.3d 161 (2d Cir. 2005).

### III. DISCUSSION

#### A. Federal Causes of Action

Plaintiffs assert that defendants violated their constitutional rights under Section 1983. Specifically, plaintiffs claim that defendants' failure to remove decedent from an abusive environment and to protect him from Pedro Jones constituted a violation of both the substantive and procedural due process rights contained in the Fourteenth Amendment.

To state a claim under Section 1983, a plaintiff must allege: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983; *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). Section 1983 does not itself create substantive rights; it offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

6

All defendants, aside from the County defendants, Armondi, Zack, and Pedro Jones, presently move to dismiss plaintiffs' due process claims. The Southampton defendants and the Hollywood Nursery defendants, as well as defendants Rubin, Scriven, West, and Grossman, argue that the federal claims brought against them should be dismissed because they are private entities and/or actors not subject to suit under Section 1983. The Stony Brook Hospital defendants also move to dismiss the due process claims, but under the theory that those claims are barred by Supreme Court and Second Circuit precedent. For the reasons discussed in detail below, the Court dismisses the federal due process claims against all moving defendants.

1. The Southampton Hospital Defendants and the Hollywood Nursery Defendants

Both the Southampton Hospital defendants and the Hollywood Nursery defendants move to dismiss plaintiffs' federal claims on the basis that they are not state actors subject to suit under Section 1983. As the Second Circuit has explained, "the core purpose of § 1983 is 'to provide compensatory relief to those deprived of their federal rights by *state actors*.'" *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 795 (2d Cir. 1999) (emphasis added) (quoting *Felder v. Casey*, 487 U.S. 131, 141 (1988)). Thus, a proper defendant in a Section 1983 action is an individual or entity who acted "under color of state law" — one who "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir. 1997) (citation and internal quotation marks omitted). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted).

As alleged in plaintiffs' second amended complaint, "Southampton Hospital is a private hospital" (Second Am. Compl. ¶ 16), and Hollywood Nursery is a New York Corporation (not a state or municipal institution) (*id.* ¶ 21). Private medical facilities are generally not state actors for purposes of Section 1983. *See*, *e.g.*, *Urena v. Wolfson*, 09-CV-1107(KAM)(LB), 2010 U.S. Dist. LEXIS 128423, at *28 (E.D.N.Y. Dec. 6, 2010); *Amofa v. Bronx-Lebanon Hosp. Center*, 05 Civ. 9230 (SHS), 2006 U.S. Dist. LEXIS 83199, at *11 (S.D.N.Y. Nov. 14, 2006). The Southampton Hospital defendants and the Hollywood Nursery defendants, as private entities and individuals, may be subject to liability under Section 1983, therefore, only if plaintiffs can show that they (1) acted pursuant to the "coercive power" of the State or are "controlled" by the State; (2) willfully participated in "joint activity" with the State or their functions are "entwined" with state policies; or (3) have been "delegated a public function" by the State. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (citation and internal quotation marks omitted).

Plaintiffs argue that their federal claims should proceed against these defendants because, at this early stage of the litigation (before discovery), it is "premature" to determine precisely whether or not the defendants were acting under color of state law during the conduct in question. (Pls.' Opp'n ¶¶ 32, 34.) Plaintiffs argue, "for one hypothetical example," that it is "conceivable" that Hollywood Nursery "was a beneficiary of a County contract or receiving County funds to care for [the decedent] as directed by the County pursuant to the Family Court Orders." (*Id.* ¶ 33.) Plaintiffs do not provide any such

7

hypothetical example pertaining to the Southampton Hospital defendants.

As a preliminary matter, plaintiffs do not allege anywhere in their second amended complaint that the Southampton Hospital or Hollywood Nursery defendants were in receipt of State funding at the time of the alleged wrongdoing. However, even if such allegations had been contained within the complaint, "the presence of state funding or regulation, in the absence of some concerted action with state officials, does not transform a private party's actions into state action." *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010); *see also Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 428-29 (2d Cir. 1977) (holding that private hospital's actions were not attributable to the State simply because the State licenses the hospital and its physicians). A plaintiff must also show that there is a "sufficiently close nexus between the State and the challenged action" of the funded or regulated entity "so that the action of the latter may be fairly treated as that of the State itself." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (citations and quotation marks omitted) (explaining that such a requirement is meant "to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains"). Plaintiffs' second amended complaint is devoid of any allegation that the Southampton Hospital or Hollywood Nursery defendants conspired with or acted in concert with the State or its agents so as to attribute their conduct to the State. Plaintiffs also fail to plead any facts that could establish that the Southampton Hospital or Hollywood Nursery defendants were performing a public function or acting under state compulsion when they allegedly failed to protect the decedent. Plaintiffs have, therefore, failed to articulate a plausible claim that either the Southampton Hospital or the Hollywood Nursery defendants are proper Section 1983 defendants and, accordingly, the due process claims brought against those defendants cannot survive a motion to dismiss.[5]

### 2. Defendant Rubin

Rubin moves to dismiss the federal claims alleged against him, arguing that he is a private doctor – "neither employed by New York State nor acting under any direct order or relationship with the state in his brief one-day treatment of the Decedent" – not subject to suit under Section 1983. (Rubin Mot to Dismiss at 9.)

In his moving papers, Rubin claims that, although he treated the decedent at Southampton Hospital, he was employed by 24/7 Emergency Physicians, P.C., a private entity separate and distinct from Southampton Hospital. (*Id.*). Rubin argues that he is a private actor whose conduct cannot be attributed to the State. (*Id.*) Whether Rubin was employed by 24/7 Emergency Physicians, P.C., or by Southampton Hospital is immaterial for purposes of resolving the pending motion to dismiss. In their second amended complaint, plaintiffs allege that Rubin "at all relevant times was a medical care provider at Southampton Hospital as either an employee, servant, contractor, agent, doctor, nurse, or other medical care provider." (Second Am. Compl. ¶ 45.) As discussed *supra*, Southampton Hospital is a private entity. Thus, accepting plaintiffs' allegation

---

[5] Even assuming *arguendo* that plaintiffs' pleadings were sufficient to support a plausible claim of state action by the Southampton Hospital and/or Hollywood Nursery defendants, for the reasons discussed *infra* (namely, the Supreme Court's decision in *DeShaney* and the Second Circuit's analysis in *Sealed*), plaintiffs' allegations do not give rise to colorable substantive or procedural due process claims that can survive a motion to dismiss.

8

as true and drawing all reasonable inferences in plaintiffs' favor, as this Court is required to do on a motion to dismiss, Rubin was a private doctor employed by a private hospital. Because plaintiffs' second amended complaint is devoid of any allegation that Rubin was a willful participant in joint activity with the State or its agents, or that his conduct in treating decedent was coerced or controlled by the State, *see Sybalski*, 546 F.3d at 257, plaintiffs have failed to sufficiently allege that Rubin was acting under color of state law for purposes of Section 1983. Accordingly, Rubin's motion to dismiss the federal claims brought against him is granted.[6]

3. The Stony Brook Hospital Defendants

Plaintiffs allege, and defendants do not dispute, that Stony Brook University Hospital is a public institution. Accordingly, the Hospital and its employees are state actors for purposes of Section 1983. *See*, *e.g.*, *Nedd v. Queens Hosp. Ctr.*, 08-cv-1141 (DLI)(LB), 2008 U.S. Dist. LEXIS 47235, at *5 (E.D.N.Y. June 18, 2008) ("The Queens Hospital Center is a public hospital, and its employees would be considered state actors.").

Nevertheless, the Stony Brook Hospital defendants move to dismiss the Section 1983 claims, arguing that controlling precedent precludes plaintiffs from claiming that the Stony Brook Hospital defendants violated due process by failing to protect the decedent from his mother's abusive boyfriend. For the reasons discussed in detail below, the Court agrees. Based on the alleged facts of this case, even construing them in the light most favorable to plaintiffs, the Stony Brook Hospital defendants cannot be held liable for violating either the substantive or procedural aspects of the Fourteenth Amendment's Due Process Clause and, accordingly, their motion to dismiss plaintiffs' Section 1983 claims is granted.

a. Substantive Due Process

The Stony Brook Hospital defendants move to dismiss plaintiffs' substantive due process claim based on the Supreme Court's holding in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189.[7] The defendants argue that the facts of *DeShaney* that led the Supreme Court to dismiss the substantive due process claim in that case are analogous to the facts alleged in the instant case. In order to properly address the Stony Brook Hospital defendants' substantive due process argument, the Court begins, therefore, with an analysis of both the facts and the holding of *DeShaney*.

In *DeShaney*, the Supreme Court granted certiorari to determine whether a State's failure to protect an individual from private abuse constitutes a violation of substantive due process. The case involved a child who was beaten, which resulted in severe mental harm. *Id.* at 193. The child's mother brought suit under Section 1983 against Winnebago County, the County's department of social services, and several of the department's employees, alleging that the child was deprived of his liberty without due process of law, in violation of the Fourteenth

---

[6] Even if plaintiffs' pleadings were sufficient to support a plausible claim of state action by defendant Rubin, for the reasons discussed *infra* (namely, the Supreme Court's decision in *DeShaney* and the Second Circuit's analysis in *Sealed*), plaintiffs' allegations do not give rise to colorable substantive or procedural due process claims that can survive a motion to dismiss.

[7] The Court notes that, in their opposition papers, plaintiffs fail to even acknowledge, let alone attempt to distinguish, *DeShaney*.

9

Amendment. *Id.* The district court granted summary judgment for the defendants, and the Court of Appeals affirmed. *Id.* at 193-94.

To begin its analysis, the Supreme Court discussed the right conferred by the Due Process Clause of the Fourteenth Amendment. After examining the language of the Clause and prior cases that analyzed the Clause, the Supreme Court explained that the Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196. Given that "the Due Process Clause does not require the State to provide its citizens with particular protective services," the Supreme Court concluded that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 196-97.

The Supreme Court went on to reject the argument that a "special relationship" was created between the child and the State, so as to imbue the State with an affirmative duty to provide the child with adequate protective services (even though the Due Process Clause imposes no such affirmative obligation on the State). *Id.* at 198. The petitioners argued that such a "special relationship" was created by the State's knowledge that the child faced the danger of his father's abuse, as well as by the fact that the State had specifically proclaimed that it intended to protect the child from his father. *Id.* at 197. The Supreme Court rejected this argument, explaining that, in the substantive due process analysis, "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 199-200. Such limitation is imposed through "incarceration, institutionalization, or other similar restraint of personal liberty." *Id.* at 200. Because the harms the child suffered occurred while he was in his father's custody, rather than in the custody of the State, there was no such "deprivation of liberty" triggering the protections of the Due Process Clause. *Id.* at 201. Accordingly, the Supreme Court affirmed the dismissal of petitioner's Section 1983 substantive due process claim.

Here, plaintiffs do not allege that the decedent was ever in the State's custody, let alone during one of the instances of Pedro Jones' abuse. Instead, plaintiffs specifically allege that the decedent was in the custody and care of his mother and Pedro Jones during each instance of abuse that he suffered (*see*, *e.g.*, Second Am. Compl. ¶¶ 65, 67, 80), including the final period of violence that ultimately led to his death (*see id.* ¶¶ 82-85). These facts, as pled by plaintiffs, make the situation analogous to that in *DeShaney* for purposes of the substantive due process analysis – the harms the decedent suffered occurred while he was in the custody of private individuals and, accordingly, even if the Stony Brook Hospital defendants knew of or pledged to help correct the danger of abuse that the decedent faced, they had no affirmative duty, under the Due Process Clause of the Fourteenth Amendment, to protect him. *See DeShaney*, 489 U.S. at 201.

The Court recognizes that, under the "state created danger exception," a state actor can be held liable for a substantive due process violation when he or she takes an affirmative step that "'assisted in creating or increasing the danger to the victim.'" *Hilbert S. v. Cnty. of Tioga*, 3:03-CV-193, 2005 U.S. Dist. LEXIS 29423, at *10 (N.D.N.Y. June 21, 2005) (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 98-99 (2d Cir. 1993)). However, the alleged facts of this

10

case, even taken in the light most favorable to plaintiffs, simply fail to articulate a plausible claim that the Stony Brook Hospital defendants "acted affirmatively, using [their] authority to create an opportunity that would not otherwise have existed for [Pedro Jones'] acts to occur." *Id.* at *11. At most, the claims against the Stony Brook Hospital defendants are founded upon the premise that they failed to do enough to stop the abuse that was occurring in the decedent's home, or that they negligently discharged the decedent into an environment that they knew or should have known was abusive. Missing from this claim, however, is any allegation that the Stony Brook Hospital defendants took the kind of affirmative action that would otherwise imbue them with a duty to protect the decedent from private abuse. *See*, *e.g.*, *DeShaney*, 489 U.S. at 201-03 ("While the State may have been aware of the dangers that [the child] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. . . . The most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them."); *Hilbert S.*, 2005 U.S. Dist. LEXIS 29423, at *15 ("Here, as in *DeShaney*, it can only be concluded that these state actors did not do enough, but, by the same token, did nothing that increased the children's vulnerability. . . . The lack of affirmative action that increased the children's danger is, in itself, fatal to the substantive due process claims against these defendants."); *see also Langdon v. Skelding*, No. 11-2353, 2013 U.S. App. LEXIS 7895, at *12-13 (6th Cir. Apr. 17, 2013) (affirming dismissal of substantive due process claim where "[t]he facts alleged merely show that the defendants did not do enough to investigate the complaints of abuse, [which] is a mere failure to act" that cannot serve as the basis for a plausible claim under the "state-created-danger" exception to *DeShaney*).

The fact that the decedent was in the Hospital's custody for certain periods of time in-between the incidents of abuse does not alter the analysis. As plaintiffs allege, the Hospital returned the decedent to his mother's and Pedro Jones' custody prior to the events at issue (*see id.* ¶ 80 (explaining that the decedent was discharged from Stony Brook University Hospital on July 20, 2010, and "given back to the custody and care of Vanessa Jones and Pedro Jones)). *See DeShaney*, 489 U.S. at 201 ("That the State once took temporary custody of [the child] does not alter this analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter."). Accordingly, plaintiffs have failed to allege a plausible substantive due process violation on the part of the Stony Brook Hospital defendants.[8] The Stony Brook Hospital

---

[8] As the Supreme Court explained in *DeShaney*:

> Judges and lawyers, like other humans, are moved by natural sympathy in a case like this to find a way for [a victim child and his or her family] to receive adequate compensation for the grievous harm inflicted upon them. But before yielding to that impulse, it is well to remember once again that the harm was inflicted not by the State . . ., but by the [child's] father.

489 U.S. at 202-03. The Court's holding is in no way intended to diminish the severity of the crime or to minimize the pain and anguish that the decedent and his family has experienced. In dismissing this particular cause of action, the Court is merely concluding that, based on the alleged facts of the case and controlling precedent, plaintiffs have no plausible claim that the Stony Brook Hospital defendants violated a substantive due process right under the Constitution.

11

defendants' motion to dismiss the Section 1983 substantive due process claim is, therefore, granted.

The Court notes that, in *DeShaney*, the Supreme Court did not foreclose the possibility that the petitioners could recover against the State under state tort law, even though they could not make out a constitutional violation. In holding that the county, its department of social services, and certain of the department's individual employees did not violate substantive due process by failing to protect the child against his father's abuse, the Supreme Court explained that "the Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation." *Id.* at 202. The Supreme Court's holding, like this Court's holding here, was limited to substantive due process: when an individual is in the custody or control of a private actor and the State has taken no affirmative step to cause or increase the individual's vulnerability to dangers at the hand of that private actor, the State has no constitutional duty to protect the individual against the private actor's violence. Thus, in holding that, under the facts of this case, plaintiffs have no plausible substantive due process claim against the Stony Brook Hospital defendants, the Court takes no position on plaintiffs' ability to recover under state law against those entities and individuals.[9]

---

[9] Other courts have similarly concluded that, where it is clear that no plausible claim exists in light of *DeShaney*, this issue should be decided at the motion to dismiss stage. *See*, *e.g.*, *Langdon*, 2013 U.S. App. LEXIS 7895, at *12-13 (affirming district court's grant of motion to dismiss the substantive due process claim where "[t]he facts alleged merely show that the defendants did not do enough to investigate the complaints of abuse, [which] is a mere failure to act" that cannot satisfy the "state-created-danger" exception to *DeShaney*); *Stevenson v. Martin Cnty. Bd. of Educ.*, 3 F. App'x 25, 30-32 (4th Cir. 2001)

b. Procedural Due Process

The Stony Brook Hospital defendants next move to dismiss plaintiffs' procedural due process claim. For the reasons that follow, the Court also grants this portion of their motion to dismiss.

In order to assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the [State] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted). Thus, a claimed violation of procedural due process involves a two-step analysis: (1) the court examines whether the State deprived plaintiff of a constitutionally protected interest, and (2) if so, the court determines whether the procedures surrounding that deprivation were constitutionally adequate. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004).

---

(affirming district court's dismissal of substantive due process claim, explaining that "[g]iven the rejection of the plaintiffs' § 1983 claims in *DeShaney* . . ., we have to conclude in this case that the school officials did not create the danger that [plaintiff child] faced at the hands of his classmates"); *Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997) (affirming dismissal of substantive due process claim because the complaint was "phrased entirely in terms of [defendant's] failure to act, and thus, does not allege an affirmative act by the state. Just as in *DeShaney*, 'the most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them.'" (quoting *DeShaney*, 489 U.S. at 203)); *Graham v. Ind. Sch. Dist. No. I-89*, 22 F.3d 991, 994-95 (10th Cir. 1994) (affirming dismissal of substantive due process claim, stating that, based on *DeShaney*, "[w]e are [] constrained to conclude because no special relationship existed between the plaintiffs and defendants, defendants' alleged nonfeasance in the fact of specific information which would mandate action does not invoke the protections of the Due Process Clause").

However, it is well settled that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). When the claimed interest is "rooted in state law, [courts] look to the particular state 'statute, contract, or regulation that purports to establish' the asserted entitlement in order to assess the parameters and the strength of the alleged interest to determine if due process protection applies." *Sealed*, 332 F.3d at 56. "Where those statutes or regulations meaningfully channel official discretion by mandating a defined administrative outcome, a property interest will be found to exist." *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005) (citation and internal quotation marks omitted); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."). The type of due process claim asserted by plaintiffs in the instant case was not reached by the Supreme Court in *DeShaney*, *see DeShaney*, 489 U.S. at 195 n.2 (declining to address petitioners' alternative argument that Wisconsin's child protection statutes created an entitlement to protective services that would enjoy due process protection against state deprivation), but has been addressed by courts within this Circuit.

In *Sealed*, the Second Circuit was asked to determine whether Connecticut's child welfare laws create an entitlement to protective services subject to constitutional scrutiny. 332 F.3d at 55-56. The Court began its analysis by looking at the underlying state statutes, stating that, "[i]n evaluating whether a state has created a protected interest in the administrative context, we must determine whether the state statute or regulation at issue meaningfully channels official discretion by mandating a defined administrative outcome." *Id.* at 56; *see also Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989) ("[A] State creates a protected liberty interest by placing substantive limitations on official discretion." (citation and internal quotation marks omitted)). For, as the court explained, "[w]here the administrative scheme does not require a certain outcome, but merely *authorizes* particular actions and remedies, the scheme does not create 'entitlements' that receive constitutional protection under the Fourteenth Amendment." *Id.* (citing *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 175 (2d Cir. 1991)). The court emphasized that Connecticut's procedures for investigating child abuse, standing alone, "create no independent substantive entitlements, whose deprivation might trigger application of the Due Process Clause." *Id.* at 57 (citing *Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983)).

The Second Circuit then proceeded to analyze Connecticut's welfare statutes, finding that most of the provisions invest the State with "significant discretion" in investigating and taking remedial action against child abuse, thereby preventing the court from concluding that those provisions create a protected property or liberty interest. *Id.* The Court highlighted one statutory provision, however, that, due to its ambiguous language, could require the state to take more substantive action (in the form of removing a child from an abusive environment without parental consent) against child abuse. *Id.* at 57-58 (citing a provision under which "the commissioner, or his designee, *shall authorize* any employee of the department or any law enforcement officer to remove the child . . . from [abusive] surroundings without the consent of the child's parent or guardian"). However, because the court lacked a "clear

13

understanding of the underlying state law," it could not determine whether the provision in fact makes removal mandatory (thereby imbuing plaintiffs with "a legitimate entitlement to emergency removal potentially triggering Fourteenth Amendment protection"). *Id.* at 58 (explaining that if the provision makes removal mandatory, the court could not conclude, at this preliminary stage of litigation, that plaintiffs failed to allege the existence of a protected property or liberty interest). The Court elected, therefore, to certify interpretation of the provision to the Connecticut Supreme Court and retained jurisdiction to dispose of the appeal following its receipt of the state court's guidance. *Id.* at 59-60. When the state court held that the statutory provision at issue did not require removal, but merely authorized removal on a discretionary basis, the Second Circuit affirmed the district court's dismissal of the procedural due process claim. *See Sealed v. Sealed*, 125 F. App'x 338, 339 (2d Cir. 2005).

In *Hilbert S. v. County of Tioga*, the Northern District of New York was presented with a similar procedural due process claim, but under New York State law. 2005 U.S. Dist. LEXIS 29424, at *30. In that case, plaintiffs argued that they were denied protective services without due process of law – protective services that they claimed they were entitled to under New York Social Services Law. *Id.* at *34. Following the Second Circuit's guidance, the court proceeded to analyze whether New York's child welfare legislation "'require[s] a certain outcome,'" or "'merely *authorizes* particular actions and remedies'" (to discern whether or not the State's administrative scheme creates a protected property or liberty interest). *Id.* at *33 (quoting *Sealed*, 332 F.3d at 56). In rejecting plaintiffs' contention that New York's legislation creates an entitlement to protective services subject to due process scrutiny, the court focused on the discretionary aspects of the statute. First, the court noted that New York State courts have previously denied procedural due process claims based on the State's child welfare statute precisely because the statute involves discretionary determinations. *Id.* at *37-38. Second, the court explained that even if a certain mandatory aspect of the statute was not followed by the defendants, no procedural due process claim could survive because the mandate (*i.e.*, to conduct an immediate investigation once a report of suspected child abuse is received) merely authorizes particular actions and remedies, but does not require a certain substantive outcome. *Id.* at *41. For these reasons, the court concluded that "it cannot be said that [the plaintiffs] were denied constitutionally protected liberty or property rights under the statutory scheme in question," and dismissed the procedural due process claim. *Id.* at *42.

Here, plaintiffs allege that the Stony Brook Hospital defendants denied them due process by failing to report child abuse and by releasing (rather than removing) the child back into the custody and control of Vanessa Jones and Pedro Jones. (*See* Second Am. Compl. ¶¶ 180-81.) Plaintiffs also complain of the defendants' failure to diagnose child abuse. (*See id.* ¶ 181.) Although plaintiffs do not explicitly cite provisions of New York's child protection statute in their amended complaint, the Court construes plaintiffs' procedural due process claim to be that the State's legislation creates an entitlement to child protective services that is subject to due process scrutiny.

Under New York Social Services Law § 413, certain persons and officials are required to report cases of suspected child abuse or maltreatment. Physicians, physician assistants, and surgeons (individuals of the type contained within the group of Stony

14

Brook Hospital defendants) are included in the list of people required to report suspected abuse, *see* N.Y. Soc. Servs. L. § 413(1)(a), and Section 415 of New York Social Services Law details the State's reporting procedures.

Although New York's child welfare legislation mandates that reports of suspected child abuse be made by certain individuals in a particular fashion, it does not create an entitlement or expectation of a particular outcome (but merely authorizes particular actions and remedies to address the reported abuse) so as to trigger due process protection. *See Sealed*, 332 F.3d at 56; *Hilbert S.*, 2005 U.S. Dist. LEXIS 29423, at *38-39 ("The act of filing certain case management reports, or even reporting information about child abuse . . ., even if mandated by the statute, does not yield a substantive outcome entitled to due process protection." (internal citations omitted)); *see also Langdon*, 2013 U.S. App. LEXIS 7895, at *15-16 ("The Michigan [child welfare] statute mandates a process based on a substantive predicate, not a particular outcome. . . . An expectation that some sort of action will be taken is not enough. Rather, a plaintiff must have an expectation that a particular result will follow from a particular, required action." (citation and internal quotation marks omitted)). Said another way, the State's child welfare legislation contains procedural requirements and mandates that a particular process be followed in the case of suspected child abuse, but it does not command a particular substantive outcome. Instead, under New York's statute, the provision of preventive services is predicated on discretionary determinations. *See Hilbert S.*, 2005 U.S. Dist. LEXIS 29423, at *37-38 (explaining that the New York statutory scheme "invests significant discretion in the child protective workers to determine whether an investigation is warranted and what remedial action, if any, to pursue based on the results of the investigation"); *cf. Langdon*, 2013 U.S. App. LEXIS 7895, at *16-17 (noting that because child protective services officers must first make a finding that a parent has abused a child – a determination that "necessarily involves a broad amount of discretion" – before taking action under the State's welfare laws, there is no protected property interest (internal citation and quotation marks omitted)). Indeed, New York state courts have previously expounded upon the discretionary aspects of the State's child welfare legislation:

> Inherent in plaintiff's claim of entitlement to such preventive services is the implication that the statute imposes a nondiscretionary duty on the part of social service officials to make the statutorily required finding under certain described circumstances. Such reasoning has already been rejected by this Court inasmuch as such professional evaluation as to the existence of a circumstance requiring child preventive services cannot reasonably be construed as ministerial or nondiscretionary. *Any "entitlement" sought to be enforced depends upon the decisions of social services professionals and does not even come into existence until the discretionary determination as to what is appropriate has been made.*

*Mark G. v. Sabol*, 247 A.D.2d 15, 29 (1st Dep't 1998) (emphasis added) (citations omitted), *aff'd* 93 N.Y.2d 710 (1999); *see also Grant v. Cuomo*, 130 A.D.2d 154, 163-65 (1st Dep't 1987) (analyzing provisions of New York Social Services Law and explaining that the findings that serve as a prerequisite to any obligation to provide preventative services involve the exercise of discretion and professional judgment).

15

Because New York's welfare legislations "cannot be considered to channel official discretion sufficiently meaningfully," *Kapps*, 404 F.3d at 113, plaintiffs cannot plausibly claim that the preventive services that they were allegedly denied are constitutionally protected liberty or property rights subject to due process scrutiny.[10]

The Court notes that courts in other Circuits have reached the same conclusion when analyzing similarly drafted child welfare statutes. *See Langdon*, 2013 U.S. App. LEXIS 7895, at *15-17 (affirming dismissal of procedural due process claim because State child welfare statute "mandates a process based on a substantive predicate, not a particular outcome," and the "substantive predicate is discretionary, not mandatory"); *Forrester v. Bass*, 397 F.3d 1047, 1056-57 (8th Cir. 2005) (finding no protected interests subject to due process where statutory language "simply mandates particular preliminary actions be undertaken and authorizes the provision of social services, thereby leaving the particular substantive outcome in each case to the sound discretion of trained social workers and law enforcement officers"); *Doe by Fein v. District of Columbia*, 93 F.3d 861, 868 (D.C. Cir. 1996) ("[P]rocess alone does not give rise to a protected substantive interest: by codifying procedures for investigating child abuse and neglect reports, D.C. has not assumed a constitutional obligation to protect children from such abuse and neglect. The fact that Doe can point to a D.C. statute mandating investigation does not, therefore, convert a meritless substantive due process claim into a fruitful procedural one."); *Doe v. Milwaukee Cnty.*, 903 F.2d 499, 503 (7th Cir. 1990) (finding no entitlement to State investigation of a report of child abuse because the State child welfare laws are a set of *procedures* that guide the State in their efforts to prevent child abuse, and are "not 'benefits' within the meaning of Fourteenth Amendment jurisprudence").

Thus, because New York's child welfare legislation does not create a protected liberty or property interest upon which plaintiffs could base a procedural due process claim, that claim against the Stony Brook Hospital defendants is dismissed.

4. Defendants Scriven, West, and Grossman

Finally, defendants Scriven, West, and Grossman move to dismiss plaintiffs' due process claims, arguing that they are private practitioners that were not acting under color

---

[10] To the extent plaintiffs attempt to predicate their procedural due process claim on the Stony Brook Hospital defendants' alleged failure to report the child abuse, as required under New York Social Services Law § 413(1)(a), that claim also fails to survive a motion to dismiss. Although New York State law requires that individuals like the Stony Brook Hospital defendants report instances of suspected child abuse or maltreatment, such reporting is not constitutionally required. "Violations of state law procedural requirements do not alone constitute a deprivation of due process since federal constitutional standards rather than state law define the requirements of procedural due process." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 502-03 (S.D.N.Y. 2012); *see also Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) (explaining that, although violations of state law procedural requirements "may give rise to state law claims, [they] do not, by themselves, constitute due process violations of a constitutional nature"). Thus, even if plaintiffs' allegation that the Stony Brook Hospital defendants failed to report the abuse is taken as true and all reasonable inferences are drawn in plaintiffs' favor, plaintiffs cannot maintain a plausible due process claim based on a failure to report in accordance with New York State law. *See, e.g., K.D. v. White Plains Sch. Dis.*, 11 Civ. 6756 (ER), 2013 U.S. Dist. LEXIS 15550, at *49 (S.D.N.Y. Feb. 5, 2013) (dismissing plaintiffs' claim that defendants' failure to comply with New York state law requiring school officials to report suspected abuse to OCFS violated plaintiffs' procedural due process rights because that failure, standing alone, did not amount to a constitutional violation).

16

of state law when they rendered medical care and treatment to the decedent.

Plaintiffs allege that Scriven, West, and Grossman were "at all relevant times . . . doctor[s] practicing at Stony Brook Hospital as either [] employee[s], servant[s], contractor[s], agent[s] or other medical care provider[s]." (Second Am. Compl. ¶¶ 33, 35, 40.) The three defendants oppose this allegation in their moving papers, explaining that they were not employed by Stony Brook University Hospital but, rather, by three separate private entities. (*See* Scriven, West, Grossman Mot. to Dismiss at 4-5 (naming the private medical facilities that each doctor was employed by at the time relevant to this action).) Although these defendants take issue with the allegations contained within plaintiffs' complaint, at the motion to dismiss stage the Court is required to accept those allegations as true and view them most favorable to plaintiffs. Thus, because the Court, for purposes of the pending motion, accepts as true plaintiffs' contention that all three doctors were employed, at least in some capacity, by Stony Brook University Hospital (a public entity), plaintiffs have sufficiently pled that doctors Scriven, West, and Grossman are state actors for purposes of Section 1983.

However, for the same reasons that plaintiffs have no plausible substantive and procedural due process claims against the Stony Brook Hospital defendants under the facts of this case, they too cannot establish that Scriven's, West's, and/or Grossman's conduct violated their constitutional rights (even if they were acting under color of state law at the time). Accordingly, the federal claims brought against Scriven, West, and Grossman must fail, and their motion to dismiss those claims is granted.

B. Leave to Amend

Although plaintiffs have not requested leave to re-plead their second amended complaint, the Court has considered whether plaintiffs should be given an opportunity to re-plead their claims. Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] cause[] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). As discussed in detail *supra*, it is clear from the second amended complaint that there was no state action by the private defendants. As for the public defendants, in their opposition to the motions to dismiss, plaintiffs have pointed to no affirmative acts that those defendants took to subject them to liability for violating substantive due process, and it is evident from the second amended complaint that there are no such affirmative acts in this case. In addition, plaintiffs cannot plausibly claim that the preventive services that they were denied are constitutionally protected rights and, accordingly, cannot maintain a procedural due process claim against the moving public defendants. Thus, any attempt to re-plead these claims that the Court has dismissed would be futile.

Moreover, plaintiffs have not requested an opportunity to re-plead, and have failed to explain how any amendment could possibly state a plausible legal claim. Thus, the Court declines to grant plaintiffs leave to re-plead. *See*, *e.g.*, *Ackermann v. Doyle*, 43 F. Supp. 2d 265, 275 (E.D.N.Y. 1999) ("[T]he Court is unable to discern a viable cause of action from the complaint, and the

17

plaintiff did not request leave to replead. The Court declines to *sua sponte* afford the plaintiff leave to amend on the ground of futility. In the Court's view, granting leave to amend would be unproductive and dismissal with prejudice is appropriate.").

Finally, plaintiffs have been given ample opportunity to allege viable federal claims against the moving defendants and have failed to do so. This is plaintiffs' second amended complaint over the span of two years. However, plaintiffs' second amended complaint still fails to state a plausible federal claim against the Stony Brook Hospital, Southampton Hospital, and Hollywood Nursery defendants, as well as against defendants Rubin, Scriven, West, and Grossman. Under these circumstances, the Court declines to grant plaintiffs yet another opportunity to re-plead. *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996) (noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim" (citing *Armstrong v. McAlpin*, 699 F.2d 79, 93-94 (2d Cir. 1983) ("Because the complaint whose allegations were being considered by the district court was plaintiffs' second amended complaint, the district court did not abuse its discretion in refusing to give plaintiffs a fourth attempt to plead."))).

C.  Pendent Party Jurisdiction

All of the moving defendants request that the Court decline to exercise supplemental jurisdiction over plaintiffs' state law claims in the event that the Court dismisses the federal claims brought against them. For the reasons set forth below, the Court denies that portion of each of the motions to dismiss.

28 U.S.C. § 1367(a) provides that, subject to the requirements of § 1367(b) and (c), district courts may exercise supplemental jurisdiction over claims that form part of the "same case or controversy" as a claim over which the court has original jurisdiction. To determine whether claims form part of the "same case or controversy," the Court should ask whether the claims "derive from a common nucleus of operative fact." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (citation and internal quotation marks omitted).

Although the Court has dismissed the federal claims as against all of the moving defendants, the federal claims against the County defendants, Pedro Jones, Armandi, and Zack still remain in the case (as those defendants have not so moved). It is proper for the Court, in its discretion, to exercise supplemental jurisdiction over plaintiffs' state law claims against the Southampton Hospital defendants, the Stony Brook Hospital defendants, the Hollywood Nursery defendants, Rubin, Scriven, West and Grossman, even though there are no remaining federal claims against any of them, because the Court shall exercise pendent party jurisdiction when the claims against additional parties arise out of the same set of facts as the federal claims in a particular case. *See id.* ("[D]isputes are part of the same case or controversy within § 1367 when they derive from a common nucleus of operative fact. . . . In determining whether two disputes arise from a 'common nucleus of operative fact,' we have traditionally asked whether the facts underlying the federal and state claims substantially overlapped . . . or the federal claim necessarily brought the facts underlying the state claim before the court. This is so even if the state law claim is asserted against a party different from the one named in the federal claim."

18

(alterations, citations, and internal quotation marks omitted)); *Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000) ("We have previously observed that 28 U.S.C. § 1367(a) . . . makes pendent party jurisdiction possible where the claim in question arises out of the same set of facts that give rise to an anchoring federal question claim against another party.")

Here, plaintiffs assert state law claims against the moving defendants for (1) breach of New York State Social Services Law, (2) negligence, (3) wrongful death, (4) medical malpractice, and (5) social worker malpractice, all of which derive from a common nucleus of operative fact as the federal claims that remain in this case against the County defendants, Pedro Jones, Armandi, and Zack – namely, from the events surrounding the care (or lack thereof) provided to decedent prior to his death. Accordingly, it is appropriate for the Court to exercise supplemental jurisdiction over all of plaintiffs' state law claims at this juncture. If the non-moving defendants move to dismiss the federal claims at a later date, the Court will reevaluate whether there is a basis for supplemental jurisdiction over the state law claims at that time.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the pending motions to dismiss with respect to plaintiffs' federal substantive and procedural due process claims. Accordingly, the federal claims alleged against the Southampton defendants, the Hollywood Nursery defendants, the Stony Brook Hospital defendants, Rubin, Scriven, West, and Grossman are dismissed. However, the Court denies those defendants' request that it decline to exercise supplemental jurisdiction over the state law claims; the Court retains supplemental jurisdiction over all of the state law claims in this action (including those brought against defendants for whom there are now no longer any remaining federal claims).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 20, 2013
       Central Islip, NY

\* \* \*

Plaintiffs are represented by Michael J. Collesano, 110 Wall Street, 11th Floor, New York, N.Y. 10005. The County defendants are represented by Arlene S. Zwilling, Suffolk County Attorney, P.O. Box 6100, H. Lee Demnison Building- 5th Floor, 100 Veterans Memorial Highway, Hauppauge, N.Y. 11788. The Southampton Hospital defendants are represented by Anthony Francis Barbiero and Joseph M. O'Connor of Bartlett, McDonough & Monaghan, LLP, 670 Main Street, Islip, N.Y. 11751. The Hollywood Nursery defendants are represented by Steven F. Goldstein of Goldstein & Tanenbaum, LLP, One Old Country Road, Suite 430, Carle Place, N.Y. 11514. The Stony Brook Hospital defendants are represented by Ross Neil Herman of the New York State Attorney General's Office, 120 Broadway, 12th Floor, New York, N.Y. 10271, and Susan M. Connolly of the New York State Attorney General's Office, 300 Motor Parkway, Suite 230, Hauppauge, N.Y. 11788. Defendants Scriven, West, and Grossman are represented by Eric B. Betron, John W. Hoefling, and Shawn P. Kelly of Kelly, Rode & Kelly, LLP, 330 Old Country Road, Suite 305, Mineola, N.Y. 11501. Defendant

Rubin is represented by Jennifer Lynn Larkin-Higgins of Geisler & Gabriele, LLP, 100 Quentin Roosevelt Blvd., P.O. Box 8022, Garden City, N.Y. 11530. Defendants Armondi and Zack are represented by Anthony Matturro of Matturro & Associates, 1025 Old Country Road, Suite 110, Westbury, N.Y. 11590.