# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

№ 11-CV-2445

MARIE JONES AS ADMINISTRATOR OF THE ESTATE OF ROY ANTONIO JONES, III; AND ROY A. JONES, JR.,

Plaintiffs,

VERSUS

COUNTY OF SUFFOLK AND PEDRO JONES,

Defendants.

**MEMORANDUM AND ORDER**
February 21, 2017

JOSEPH F. BIANCO, District Judge:

Marie Jones, as administrator of the Estate of her grandson Roy A. Jones, III ("decedent"), and decedent's father, Roy A. Jones, Jr. ("Roy Jones"), (collectively, "plaintiffs") brought this civil rights action against defendants the County of Suffolk ("the County") and Pedro Jones (collectively, "defendants") in connection with the beating death of decedent by Pedro Jones on August 1, 2010. On that day, the sixteen-month-old decedent resided with and was in the custody of his mother, Vanessa Jones. Pedro Jones was her boyfriend.

Plaintiffs brought 28 U.S.C. § 1983 claims against the County, alleging that it violated decedent's Fourteenth Amendment procedural and substantive due process rights by failing to remove him from his mother's custody or take other steps to protect him even though the County had previously removed decedent's sister. The County now moves to dismiss for failure to state a claim under F.R.C.P. 12(b)(6). For the following reasons, the motion is granted as to the federal claims. The Court declines to exercise supplemental jurisdiction over the state law claims against both defendants and dismisses the state law claims, without prejudice to refiling in state court.

## I. BACKGROUND

The following facts are taken from the Third Amended Complaint ("Compl.") and from the parties' submissions. (ECF No. 209.) The Court assumes them to be true for purposes of deciding this motion and construes them in the light most favorable to plaintiffs, the non-moving party.

A. Facts

Before decedent was born, his parents, Roy and Vanessa Jones, had a daughter, Amiya Jones ("Amiya"). (Compl. at ¶ 16.) After a domestic dispute occurred between the parents in Amiya's presence in October 2008, the Suffolk County Department of Social Services ("DSS") procured an order of protection in favor of Amiya against both parents from the Suffolk County Family Court. (*Id.* ¶¶ 21–23.) Roy and Vanessa Jones violated the terms of that order, and DSS filed an emergency petition with the Family Court seeking to remove Amiya from their custody. (*Id.* ¶ 24.) DSS removed Amiya in connection with that petition, the Family Court subsequently deemed her a neglected child, and she was not returned to her parents' custody before August 1, 2010, the date of decedent's death. (*Id.* ¶¶ 25–28.)

When decedent was born on March 18, 2009, the County immediately sought and obtained a temporary order of protection in his favor against Roy and Vanessa Jones from the Family Court, which found on June 4, 2009 that decedent was a victim of "derivative neglect" because of Amiya's status as a neglected child. (*Id.* ¶¶ 29–31.) The order of protection released decedent to his mother's custody but required her to "[r]efrain from acts . . . that create an unreasonable risk to the health, safety or welfare of [decedent]." (Temporary Order of Protection, Ex. A to Def.'s Mot. to Dismiss for Failure to State a Claim ("Def.'s Mot. to Dismiss"), ECF No. 211-2, at 1.)[1] The order was to last until April 7, 2010. (*Id.* at 2.) Nevertheless, the mother continued to engage in conduct that created "an unreasonable risk to the health, safety or welfare" of decedent. (Compl. ¶ 35.) She was also arrested and charged with the assault of another individual on February 4, 2010. (*Id.* ¶ 42.)

In a separate order dated June 4, 2009, the Family Court placed Vanessa Jones under the supervision of DSS. (Order of Fact-Finding and Disposition without Placement, Ex. B to Def.'s Mot. to Dismiss, ECF No. 211-3, at 4.) It also required her to obtain a mental health evaluation and suitable housing. (*Id.* at 5.) On June 25, 2009, Vanessa Jones participated in a mental health evaluation and was referred for outpatient substance abuse counseling. (Pet. for Modification and Extension of Supervision, Ex. E to Def.'s Mot. to Dismiss, ECF No. 211-6.) She was admitted into a treatment program on April 5, 2010, but demonstrated inconsistent attendance and failed to complete the program by May 24, 2010. (*Id.*) At that time, the County asked the Family Court to extend the effective period of its June 4 orders. (*Id.*) The Family Court agreed, first extending its orders through July 5, 2010, then through July 29, 2010, and finally through July 28, 2011. (*See* Exs. C, D, F to Def.'s Mot. to Dismiss, ECF Nos. 211-4, 211-5, 211-7.)

Before decedent's death, his father was incarcerated, and his mother moved him to a Native American Reservation. (Compl. ¶¶ 38, 43.) After the move and about a month before decedent's death, DSS Case Worker Corris Nickens visited the reservation and found decedent in the care of Rose Lawrence, who, in Nickens's view, was too young to be a caretaker. (*Id.* ¶¶ 46–48.) Nickens advised Vanessa Jones of his opinion about Lawrence. (*Id.* ¶ 48.) About two weeks later—in

---

[1] This Court may take judicial notice of orders of the Family Court on a Rule 12(b)(6) motion. *See Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 208 (2d Cir. 2012) ("[A] court can consider the complaint, documents attached to the complaint, documents incorporated by reference in the complaint, and public records when considering a motion to dismiss." (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002))); *Lomnicki v. Cardinal McCloskey Servs.*, No. 04-CV-4548 (KMK), 2007 WL 2176059, at *1 (S.D.N.Y. July 26, 2007) (taking judicial notice of family court records).

July 2010—Nickens encountered Pedro Jones, Vanessa Jones's new boyfriend, while visiting the home, but Nickens did nothing to obtain more information about this individual. (*Id.* ¶ 50.)

On July 20, 2010, decedent suffered an unexplained skull fracture and was hospitalized. (*Id.* ¶¶ 52–53.) Vanessa Jones told Nickens that Rose Lawrence had been caring for her child when decedent sustained the injury, but Lawrence denied this assertion. (*Id.* ¶¶ 57, 59.) Roy Jones, incarcerated at the time, told Nickens and other County investigators that decedent was in danger, that Vanessa Jones left decedent with whomever she could, and that decedent was not in his mother's care at the time of the injury. (*Id.* ¶ 61.) Neither Nickens nor anyone else with the County took action to remove the child in response to this incident. (*Id.* ¶ 64.)

After decedent was released from the hospital, in the week between decedent's skull fracture and his death, Nickens visited him at his home and found him to be underweight. (*Id.* ¶¶ 69–70.) On August 1, 2010, Vanessa Jones left decedent alone with Pedro Jones. (*Id.* ¶ 71.) While decedent was in his care, Jones shook, punched, and fatally wounded decedent, who was pronounced dead at Southampton Hospital at 9:11 p.m. (*Id.* ¶ 73.) The autopsy indicated that the physical abuse had been occurring for some time before that night. (*Id.* ¶ 74.) Pedro Jones pleaded guilty to the murder of decedent and, in his statement to the police after the arrest, indicated that he had abused decedent on multiple occasions. (*Id.* ¶¶ 72, 74.)

### B. Procedural History

Roy Jones brought this Section 1983 action against the County and a number of other defendants, including several private entities, on May 17, 2011. (ECF No. 1). His request for a stay pending appointment of the representative of decedent's estate was granted on July 14, 2011. (ECF No. 14.) Marie Jones, decedent's paternal grandmother, was appointed temporary administrator of decedent's estate on December 16, 2011 and then as permanent administrator on April 27, 2012. (Compl. ¶ 4.) Plaintiffs then filed an amended complaint against a variety of defendants on several different claims. (ECF No. 23.) Thereafter, the case went through an extended period of motion practice and discovery in relation to other defendants who were ultimately dismissed from this action. (*See, e.g.*, ECF Nos. 90, 192, 203.) Notably, this Court granted a motion to dismiss filed by several private entities and individuals on August 20, 2013. *See Jones v. Nickens*, 961 F. Supp. 2d 475, 492 (E.D.N.Y. 2013).

On June 19, 2016, plaintiffs filed a third amended complaint against the County and Pedro Jones, raising Section 1983 claims for violations of decedent's substantive and procedural due process rights, as well as state law wrongful death claims against the County and Pedro Jones. (ECF No. 209.) The County moved to dismiss for failure to state a claim on August 25, 2016, plaintiffs filed an opposition on November 18, 2016, and the County replied on December 2, 2016. (ECF Nos. 211–13.) Oral argument was held on January 6, 2017. The Court has fully considered the parties' submissions.

### II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible

3

set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth two principles for a district court to follow in deciding a motion to dismiss. 556 U.S. 662 (2009). First, district courts must "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### III. Discussion

Plaintiffs raise two federal claims under Section 1983 for violations of decedent's procedural and substantive due process rights as the basis for this Court's jurisdiction. Specifically, plaintiffs assert that the County violated decedent's procedural and substantive due process rights by failing to remove him from Vanessa Jones's custody even though it was required to do so by the New York State Child Protective Services Manual (the "manual"), New York Family Court Law § 1024, and New York Social Services Law § 417 by virtue of Amiya's earlier removal. (*See* Compl. ¶¶ 110, 112, 131–41; Pls.' Mem. of Law in Opp'n. to Def.'s Rule 12(b)(6) Mot. ("Pls.' Br."), ECF No. 213, at 7–8.) Plaintiffs further contend that the County violated decedent's procedural and substantive due process rights by failing to ensure Vanessa Jones's compliance with the Family Court orders, conduct a safety assessment, or otherwise protect decedent. (*See* Compl. ¶¶ 112, 114, 115, 120, 135–41.) The County contends that plaintiffs fail to state a claim under F.R.C.P. 12(b)(6) because (1) neither the cited statutes nor the manual create a constitutionally protected interest, as required to state a procedural due process claim; (2) decedent was never in the County's custody, and the County never took an affirmative step to place the child in danger, as required to state a substantive due process claim; (3) plaintiffs' federal claims are based on the County's negligence, but negligence is not actionable under Section 1983; and (4) plaintiffs failed to allege a policy or custom of the County as the basis for these constitutional violations, as required to state a Section 1983 claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1977). For the reasons set forth below, the Court agrees with the County on the first two points, and plaintiffs' federal claims are dismissed on these grounds. Furthermore, the Court does not reach the County's other arguments and declines to exercise jurisdiction over the state law claims against either defendant.

### A. Procedural Due Process Claim

The County first moves to dismiss plaintiffs' procedural due process claim. In order to assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the [State] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted). Thus, a claimed violation of procedural due process involves a two-step analysis: (1) the court examines

4

whether the State deprived plaintiff of a constitutionally protected interest, and (2) if so, the court determines whether the procedures surrounding that deprivation were constitutionally adequate. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004).

Under the first step, it is well settled that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). When the claimed interest is "rooted in state law, [courts] look to the particular state 'statute, contract, or regulation that purports to establish' the asserted entitlement in order to assess the parameters and the strength of the alleged interest to determine if due process protection applies." *Sealed v. Sealed*, 332 F.3d 51, 56 (2d Cir. 2003) ("*Sealed I*"). "Where those statutes or regulations meaningfully channel official discretion by mandating a defined administrative outcome, a property interest will be found to exist." *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005) (citation omitted); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").

In *Sealed I*, for example, the Second Circuit was asked to determine whether Connecticut's child welfare laws create an entitlement to protective services subject to constitutional scrutiny. 332 F.3d at 55–56. The Court began its analysis by looking at the underlying state statutes, stating that, "[i]n evaluating whether a state has created a protected interest in the administrative context, we must determine whether the state statute or regulation at issue meaningfully channels official discretion by mandating a defined administrative outcome." *Id.* at 56; *see also Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989) ("[A] State creates a protected liberty interest by placing substantive limitations on official discretion." (citation omitted)). As the Court explained, "[w]here the administrative scheme does not require a certain outcome, but merely *authorizes* particular actions and remedies, the scheme does not create 'entitlements' that receive constitutional protection under the Fourteenth Amendment." *Id.* (citing *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 175 (2d Cir. 1991)). The Court emphasized that Connecticut's procedures for investigating child abuse, standing alone, "create no independent substantive entitlements, whose deprivation might trigger application of the Due Process Clause." *Id.* at 57 (citing *Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983)).

The Second Circuit then proceeded to analyze Connecticut's welfare statutes, finding that most of the provisions invest the State with "significant discretion" in investigating and taking remedial action against child abuse, thereby preventing the Court from concluding that those provisions create a protected property or liberty interest. *Id.* The Court highlighted one statutory provision, however, that, due to its ambiguous language, could require the State to take more substantive action (in the form of removing a child from an abusive environment without parental consent) against child abuse. *Id.* at 57–58 (citing a provision under which "the commissioner, or his designee, *shall authorize* any employee of the department or any law enforcement officer to remove the child . . . from [abusive] surroundings without the consent of the child's parent or guardian"). Because the Court lacked a "clear understanding of the underlying state law," however, it could not determine whether the provision in fact makes removal mandatory (thereby imbuing plaintiffs with "a legitimate entitlement to emergency removal potentially triggering Fourteenth Amendment protection"). *Id.* at

5

58 (explaining that if the provision makes removal mandatory, the Court could not conclude, at this preliminary stage of litigation, that plaintiffs failed to allege the existence of a protected property or liberty interest). The Court elected, therefore, to certify interpretation of the provision to the Connecticut Supreme Court and retained jurisdiction to dispose of the appeal following its receipt of the state court's guidance. *Id.* at 59–60. When the state court held that the statutory provision at issue did not require removal, but merely authorized removal on a discretionary basis, the Second Circuit affirmed the district court's dismissal of the procedural due process claim. *See Sealed v. Sealed*, 125 F. App'x 338, 339 (2d Cir. 2005) ("*Sealed II*").

In *Hilbert S. v. County of Tioga*, the Northern District of New York was presented with a similar procedural due process claim, but under New York State law. No. 3:03-CV-193, 2005 WL 1460316, at *10 (N.D.N.Y. June 21, 2005). In that case, plaintiffs argued that they were denied protective services without due process of law—protective services to which they claimed they were entitled under New York Social Services Law § 411 *et seq.*, Art. 6, Title 6. *Id.* at *11. Following the Second Circuit's guidance, the court proceeded to analyze whether New York's child welfare legislation "'require[s] a certain outcome,'" or "'merely *authorizes* particular actions and remedies'" (to discern whether or not the State's administrative scheme creates a protected property or liberty interest). *Id.* (quoting *Sealed I*, 332 F.3d at 56). In rejecting plaintiffs' contention that New York's legislation creates an entitlement to protective services subject to due process scrutiny, the court focused on the discretionary aspects of the statute. First, the court noted that New York State courts have previously denied procedural due process claims based on the State's child welfare statute precisely because the statute involves discretionary determinations. *Id.* (citing *Mark G. v. Sabol*, 247 A.D.2d 15, 29 (1st Dep't 1998)). Second, the court explained that even if a certain mandatory aspect of the statute was not followed by the defendants, no procedural due process claim could survive because the mandate (*i.e.*, to conduct an immediate investigation once a report of suspected child abuse is received) merely authorizes particular actions and remedies, but does not require a certain substantive outcome. *Id.* at *41. For these reasons, the court concluded that "it cannot be said that [the plaintiffs] were denied constitutionally protected liberty or property rights under the statutory scheme in question," and dismissed the procedural due process claim. *Id.* at *42.

Plaintiffs make essentially the same argument here as the plaintiffs did in *Sealed I* and *Hilbert S.*, arguing that, under the manual and two New York statutes, decedent was "entitled to protective services under state mandates regarding, *inter alia* . . . mandated investigation and intervention protocols governing the conduct of the mandated child protective services unit of each County through its Department of Social Services." *Id.* at *11 (quoting the complaint). Specifically, plaintiffs highlight language in New York Family Court Law § 1024 and New York Social Services Law § 417. (Pls.' Br. at 7–8, 14.) Family Court Law § 1024(a) provides that

> a designated employee of a city or county department of social services shall take all necessary measures to protect a child's life or health including, when appropriate, taking or keeping a child in protective custody . . . if (i) such person has reasonable cause to believe that the child is in such circumstance or condition that his or her continuing in said place of residence or in the care and custody of the parent or person legally responsible for the child's care presents an imminent danger to the child's life or health;

6

and (ii) there is not time enough to apply for an order under section one thousand twenty-two of this article.

N.Y. Fam. Ct. Act § 1024(a). Similarly, under Social Services Law § 417,

> a designated employee of a city or county department of social services, . . . shall take all appropriate measures to protect a child's life and health including, when appropriate, taking or keeping a child in protective custody without the consent of a parent or guardian if such person has reasonable cause to believe that the circumstances or condition of the child are such that continuing in his or her place of residence or in the care and custody of the parent, guardian, custodian or other person responsible for the child's care presents an imminent danger to the child's life or health.

N.Y. Soc. Serv. Law § 417(1)(a).

Neither of the cited provisions creates a liberty interest that triggers due process protection. As a threshold matter, in its order dismissing the private entities from this case, this Court agreed with *Hilbert S.* that "the State's child welfare legislation contains procedural requirements and mandates that a particular process be followed in the case of suspected child abuse, but it does not command a particular substantive outcome. Instead, under New York's statute, the provision of preventive services is predicated on discretionary determinations." *Jones*, 961 F. Supp. 2d at 492 (citing *Hilbert S.*, 2005 WL 1460316, at *12). As this Court stated in that opinion,

> Inherent in [plaintiffs'] claim of entitlement to such preventive services is the implication that the statute imposes a nondiscretionary duty on the part of social service officials to make the statutorily required finding under certain described circumstances. Such reasoning has already been rejected by [the New York Supreme Court, Appellate Division] inasmuch as such professional evaluation as to the existence of a circumstance requiring child preventive services cannot reasonably be construed as ministerial or nondiscretionary. *Any "entitlement" sought to be enforced depends upon the decisions of social services professionals and does not even come into existence until the discretionary determination as to what is appropriate has been made.*

*Id.* (quoting *Mark G.*, 247 A.D.2d at 29 (emphasis added in original) (citations omitted)); *see also Grant v. Cuomo,* 130 A.D.2d 154, 163–65 (1st Dep't 1987) (analyzing provisions of New York Social Services Law and explaining that the findings that serve as a prerequisite to any obligation to provide preventative services involve the exercise of discretion and professional judgment).

Although the Court focused on the Social Services Law in that opinion, the same logic applies with equal force to Family Court Act § 1024, which also contains language affording case workers significant discretion. *See* N.Y. Fam. Ct. Act § 1024(a) ("[A] designated employee of a city or county department of social services shall take all necessary measures to protect a child's life or health including, *when appropriate*, taking or keeping a child in protective custody . . . [if] such person has *reasonable cause* to believe that the child is in such circumstance or condition that his or her continuing . . . in the care and custody of the parent . . . presents an imminent danger to the child's life or health." (emphasis added)). This is especially true in light of the fact that Social Services Law § 417 was enacted to implement the Family Court Act.

7

*See* N.Y. Soc. Serv. Law § 417 (enacted "[p]ursuant to the requirements and provisions of the family court act").[2]

The Court sees no reason to deviate from its earlier interpretation of New York State's child welfare scheme. In arguing for such a deviation, plaintiffs first contend that the County's discretionary duties with respect to decedent became mandatory by virtue of the County's earlier removal of Amiya from Vanessa Jones's custody. (*See* Pls.' Br. at 20.) Plaintiffs cite no statutory or case law, however, to support the proposition that the County must remove a child from a parent's custody if, at an earlier time, it removed a *different* child from that custody. On the contrary, New York's child welfare scheme appears to contemplate a case-by-case (*i.e.*, child-by-child) approach to removal. *See, e.g.*, N.Y. Soc. Serv. Law § 417 ("[A] designated employee of a city or county department of social services . . . shall take all appropriate measures to protect *a child's* life and health. . . ." (emphasis added)); N.Y. Fam. Ct. Act § 1024 ("[A] designated employee of a city or county department of social services shall take all necessary measures to protect *a child's* life or health. . . ." (emphasis added)). Indeed, a rule requiring *automatic* removal of a child born to parents from whom another child was previously removed could create significant due process issues regarding the *parent's* protected rights. *See, e.g.*, *Southerland v. City of N.Y.*, 680 F.3d 127, 142 (2d Cir. 2012) ("[P]arents . . . have a constitutionally protected liberty interest in the care, custody and management of their children. . . . The Fourteenth Amendment imposes a requirement that except in emergency circumstances, judicial process must be accorded both parent and child before removal of the child from his or her parent's custody may be effected." (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999) (first omission in original))); *Troxel v. Granville*, 530 U.S. 57, 65–66, (2000) (collecting cases concerning the "fundamental right of parents to make decisions concerning the care, custody, and control of their children"). Thus, the Court concludes that Amiya's removal, by itself, did not give her brother, decedent, a protected liberty interest in removal from the home.

Plaintiffs also argue that the circumstances present here—in particular decedent's unexplained skull fracture, which occurred less than two weeks before his death—transformed the County's discretionary powers to investigate and remove him into mandatory obligations. (Pls.' Br. at 20.) Nothing in the language of the statutes, however, suggests that certain, specific facts require automatic removal. Rather, both Family Court Law § 1024(a) and Social Services Law § 417 provide that a social worker can remove a child "when appropriate" and only if the social worker "has *reasonable cause to believe* that the child is in such circumstance or condition that his or her continuing . . . in the care and custody of the parent . . . presents an imminent danger to the child's life or health." N.Y. Fam. Ct. Act § 1024; *see also* N.Y. Soc. Serv. Act § 714 (social worker can remove child if she "has *reasonable cause to believe* that the circumstances . . . of the child are

---

[2] Plaintiffs argue that the use of the term "shall" in the statute indicates that DSS's investigatory and removal duties are mandatory. (Pls.' Br. at 8.) That same term, however, is used in both provisions, and New York courts have still interpreted Social Services Law § 417 as creating discretionary functions. *See Mark G.*, 247 A.D.2d at 29; *see also Hilbert S.*, 2005 WL 1460316, at *12. Furthermore, in *Sealed II*, the similar usage of the term "shall" in the Connecticut statute did not transform a discretionary duty into a mandatory one. *See Sealed II*, 125 F. App'x at 340. Finally, the presence of the discretionary language identified above offsets this mandatory language. Therefore, this Court concludes that the use of the term "shall" in both statutes is not dispositive on this issue.

such that continuing . . . in the care and custody of the parent . . . presents an imminent danger to the child's life or health"). The statutes' use of the phrases "when appropriate" and "reasonable cause to believe," coupled with their silence on what constitutes an "appropriate" circumstance or "reasonable cause," leaves those determinations to the discretion of the social worker in each instance.

In short, as this Court held in its earlier decision, New York State's child welfare scheme does not create a protected interest in a specific substantive outcome such as removal, *see Jones*, 961 F. Supp. 2d at 492, and no such interest is created based on Amiya's removal or decedent's injuries in the days leading up to his death. Therefore, plaintiffs have failed to state a procedural due process claim as a matter of law.

B. Substantive Due Process Claim

The County also moves to dismiss plaintiffs' substantive due process claim on the ground that decedent was not in the County's custody when he died, and custody is the "linchpin" of substantive due process claims against state actors. (Def.'s Br. at 10.)

As the Second Circuit has explained, "[t]he touchstone of due process is protection of the individual against arbitrary action of government." *Leebaert v. Harrington*, 332 F.3d 134, 139 (2d Cir. 2003) (quoting *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 845 (1998)). The Fourteenth Amendment, however, "does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable." *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005). Instead, the scope of the substantive due process doctrine is very limited. *See Washington v. Glucksberg*, 521 U.S. 702 (1997). The Supreme Court has said that it is "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). "In order to establish a violation of a right to substantive due process, [after demonstrating that it was denied a valid property interest,] a plaintiff must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena*, 432 F.3d at 112 (quoting *Lewis*, 523 U.S. at 847 n. 8). To satisfy this standard, a plaintiff must show that the government decision it challenges "was arbitrary or irrational or motivated by bad faith." *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989).

In the context of child welfare services, the seminal substantive due process case is *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989). This Court summarized that holding in its earlier order granting the private defendants' motion to dismiss. *See Jones*, 961 F. Supp. 2d at 486–87. Importantly, as this Court noted earlier, the Supreme Court indicated in *DeShaney* that the Due Process Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 486 (quoting *DeShaney*, 489 U.S. at 198). Although an exception to this rule exists where the state bears a "special relationship" to a plaintiff, the Supreme Court went on to hold in *DeShaney* that no "special relationship" arises by virtue of "the State's knowledge of the individual's predicament or from its expressions of intent to help him." *DeShaney*, 489 U.S. at 200. Instead,

> it is the State's affirmative act of restraining the individual's freedom to

9

act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*Id.* In other words, "involuntary custody [is] the linchpin of any special relationship exception" to the rule that the state is under no affirmative obligation to protect a person's liberty interest against encroachments by others. *Robischung-Walsh v. Nassau Cty. Police Dep't*, 421 F. App'x 38, 40 (2d Cir. 2011) (quoting *Matican v. City of New York,* 524 F.3d 151, 156 (2d Cir. 2008)).

Applying these rules to this case, this Court held that plaintiffs failed to state a claim against the private defendants because plaintiffs "do not allege that the decedent was ever in the State's custody, let alone during one of the instances of Pedro Jones' abuse." *Jones*, 961 F. Supp. 2d at 487. The plaintiffs still fail to make such an allegation. Instead, plaintiffs argue that, even though decedent was never in the State's custody, the County created a "special relationship" with him by removing Amiya. (Pls.' Br. at 15–16.) Again, however, they cite no law, and the Court could find none, supporting the proposition that the removal of one child creates a special relationship between the County and a different child born at a later date to the same parents. In addition, that rule does not appear to follow from the logic of *DeShaney*, which repeatedly indicates that a special relationship is created where the state takes a person into its custody. *See DeShaney*, 489 U.S. at 198–200.

Indeed, at least one case in the Second Circuit cuts directly against plaintiffs' argument. *See Hendricks v. City of N.Y., N.Y.*, No. 13 CIV. 2787 PAC, 2014 WL 3819296, at *3 (S.D.N.Y. Aug. 4, 2014). In *Hendricks*, the plaintiff was in a relationship with a man named Reginald Smith, and Smith was subject to a protective order issued by the Bronx Family Court that prohibited him from being in contact with children because he had allegedly abused his own daughter and had violent tendencies. *Id.* at *1. A caseworker with the Administration for Children's Services ("ACS") visited plaintiff's home to serve the protective order. *Id.* While there, she found Smith with plaintiff's infant son and learned about plaintiff's romantic relationship with Smith. *Id.* The caseworker took no action to enforce the protective order or otherwise warn plaintiff about Smith's violent propensities. *Id.* Two months later, Smith beat plaintiff's son to death, and plaintiff subsequently sued ACS and the City of New York, alleging, *inter alia*, that they violated her son's substantive due process rights by failing to enforce the protective order against Smith. *Id.*

The court dismissed this Section 1983 claim on the grounds that plaintiff did not adequately allege a "special relationship between the state and the decedent" because "the gravamen of the Amended Complaint is that the Municipal Defendants failed to act while knowing that the Decedent might be in danger," given the defendants' previous determination that Smith was a danger to children. *Id.* at *3. This was not enough to create a special relationship, the court reasoned, because

> [i]f a protective order prohibiting Smith's contact with children could create such a "special relationship," then the state would have a constitutional duty to protect every child. Such a broad duty is inconsistent with *DeShaney*'s teaching that the Due Process Clause is "not . . . a guarantee of certain minimal levels of safety and security."

*Id.* at \*4 (quoting *DeShaney*, 489 U.S. at 195) (omission in original).

The Court agrees with the analysis in *Hendricks*, and that reasoning applies with equal force here. If the County's removal of Amiya created a "special relationship" between the County and decedent, it would also create a special relationship with any future children of Roy or Vanessa Jones. Not only is this "inconsistent with *DeShaney*'s teaching that the Due Process Clause is 'not . . . a guarantee of certain minimal levels of safety and security,'" *id.*, it would also prove highly impractical and burdensome to the parents' privacy rights, as the state would constantly need to check on them to see if any new children have been born. Like the *Hendricks* court, this Court finds the following passage from *DeShaney* quite on point:

> [The County's] failure to [protect decedent]—though calamitous in hindsight—simply does not constitute a violation of the Due Process Clause. . . . Judges and lawyers, like other humans, are moved by natural sympathy in a case like this to find a way for [decedent] and his [father] to receive adequate compensation for the grievous harm inflicted upon them. But before yielding to that impulse, it is well to remember once again that the harm was inflicted not by the State . . ., but by [a third party]. The most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them.

*DeShaney*, 489 U.S. at 202–03; *see also Hendricks*, 2014 WL 3819296, at \*4. Such inaction does not, however, rise to the level of a constitutional violation by the County. *See DeShaney*, 489 U.S. at 200. It follows that, under *DeShaney*, plaintiffs have failed to state a substantive due process claim against the County.[3] *See id.* Accordingly, the substantive due process claim is dismissed as a matter of law.[4]

C. Leave to Amend

Although plaintiffs have not requested leave to submit an amended complaint, the Court has considered whether they should be given an opportunity to do so. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins.*

---

[3] To the extent plaintiffs invoke the "state-created danger" exception to the rule that states have no affirmative obligation to protect individuals not in their custody, that argument fails because the County did nothing to create or increase the danger decedent faced. *See Matican*, 524 F.3d at 157 ("[T]he state does infringe a victim's due process rights when its officers *assist in creating or increasing the danger* that the victim faced at the hands of a third party."). Passive inaction does not rise to the level of creating or increasing danger. *See Hilbert S.*, 2005 WL 1460316, at \*4 ("[T]he actor must have acted *affirmatively*, using his or her authority to create an opportunity that would not otherwise have existed for the third party's acts to occur."); *Brown v. Commonwealth of Pennsylvania,*

*Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 479 (3d Cir. 2003) ("The Supreme Court has specifically pointed out that the Due Process Clause is not implicated by an official's negligent act. . . . '[I]ndefensible passivity,' and 'nonfeasance' do not rise to the level of a constitutional violation." (citations omitted) (alterations in original)).

[4] In addition, given the Court's conclusion that plaintiffs failed to state procedural or substantive due process claims on the grounds discussed above, the Court need not and does not reach the County's alternative arguments for dismissal.

11

*Co.*, 310 F.3d 84, 101 (2d Cir. 2002); *see Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (finding that leave to amend may be denied based upon the "futility of amendment"). As to futility, "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). Furthermore, if amendment of the complaint would not cure the substantive defects of the claim, leave to amend should be denied. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Here, the Court has concluded that, as a matter of law, plaintiffs have not pleaded a violation of decedent's procedural due process rights because New York law does not afford decedent a protected interest in removal or other protection by virtue of Amiya's removal or decedent's head injury. Likewise, plaintiffs have not pleaded a violation of decedent's substantive due process rights because decedent was not in the County's custody at the time of his death, and Amiya's removal did not create a "special relationship" between decedent and the County. As such, the defects in the Complaint are substantive, and therefore any attempt to amend it would be futile. *See id.* Consequently, leave to amend is denied.

D. State Law Claims

Plaintiffs also raise state law wrongful death claims against the County and Pedro Jones. Having concluded that plaintiffs failed to state any federal claims, however, the Court declines in its discretion to exercise pendent jurisdiction over the state law claims. *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims" (*citing Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988))).

IV. CONCLUSION

For these reasons, the County's motion to dismiss the federal claims in the third amended complaint is granted. The Court in its discretion declines to exercise supplemental jurisdiction over the state law claims against both defendants, and those claims are dismissed without prejudice to refiling in state court. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 21, 2017
      Central Islip, NY

\* \* \*

Plaintiffs are represented by Michael J. Collesano, One World Trade Center, 85th Floor, New York, NY 10007. Defendants are represented by Arlene S. Zwilling, Assistant County Attorney, on behalf of Dennis M. Brown, Suffolk County Attorney, 100 Veterans Memorial Highway, Hauppauge, New York 11788.